IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KENT STUBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  18-cv-408-RJD |
| | ) | |
| HCUA CUNNINGHAM, DR. AHMED, | ) | |
| NICHOLAS LAMB, OFFICER BOWKER, | ) | |
| OFFICER JOHNSON, and ROB JEFFREYS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Kent Stubbs, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Plaintiff alleges he fell from his top bunk on April 10, 2017. Plaintiff sustained injuries to his back, head, left wrist, and finger. Plaintiff alleges he was provided inadequate medical treatment to address his injuries. Plaintiff is proceeding on the following claims:

> Count One:  Defendants Lamb, Cunningham, Ahmed, Bowker, and Johnson were deliberately indifferent to Plaintiff's serious medical needs following his fall from a bunk bed at Lawrence on April 10, 2017, in violation of the Eighth Amendment.
>
> Count Two:  Defendant Jeffreys failed to provide Plaintiff with reasonable accommodations for his disabilities beginning April 10, 2017, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794-94e.

This matter is now before the Court on the Motion for Summary Judgment filed by Dr. Ahmed (Doc. 113), and the Motion for Summary Judgment filed by Defendants Cunningham,

Page **1** of **19**

Lamb, Bowker, Johnson, and Jeffreys (Doc. 116). For the reasons set forth below, Defendant Ahmed's Motion is **GRANTED**; and Defendant Cunningham, Lamb, Bowker, Johnson, and Jeffreys' Motion is **GRANTED IN PART AND DENIED IN PART**.

## Factual Background

The claims at issue in this lawsuit occurred while Plaintiff was incarcerated at Lawrence Correctional Center ("Lawrence"), and was spurred by an incident that occurred on April 10, 2017, when Plaintiff fell while attempting to climb down from his top bunk (Affidavit of Plaintiff Kent Stubbs, Doc. 128 at 26). Plaintiff recalls he fell backwards several feet, landing on his back and head (Deposition of Plaintiff Kent Stubbs, Doc. 116-1 at 8). Plaintiff felt a "pop" in his back, and sustained a knot on his head, a swollen wrist, and broken finger nail (Doc. 116-1 at 8; Doc. 128 at 26). Plaintiff received assistance from an officer, lieutenant, and nurse, who maneuvered Plaintiff to a wheelchair and escorted him to the healthcare unit (Doc. 116-1 at 22; Doc. 128 at 27).

Plaintiff was first examined by a nurse in the healthcare unit at 5:45 a.m. who recorded his vitals and documented his injuries (Affidavit of Faiyaz Ahmed, MD, Doc. 114-1 at ¶ 6; Doc. 116-1 at 11; *see* Doc. 114-2 at 58). According to the Affidavit of Dr. Ahmed and Plaintiff's medical records, Defendant Dr. Ahmed also saw Plaintiff on April 10, 2017 at 8:15 a.m. (Doc. 114-1 at ¶ 6; *see* Doc. 114-2 at 61). Dr. Ahmed noted Plaintiff complained of pain in his lower back and left distal forearm (*Id.*). On examination, Dr. Ahmed noted no skin break, but found Plaintiff's lower back, right hip, and left wrist were tender (*Id.*). Dr. Ahmed ordered x-rays of Plaintiff's left forearm, left wrist, lumbar spine, and right hip joint (*Id.*). At 3:00 p.m., Dr. Ahmed noted no apparent fractures or dislocations were evident from the x-rays (*see* Doc. 114-2 at 62). Plaintiff disputes that he was seen by Dr. Ahmed on the day of his fall; rather, he avers he was examined by a nurse, taken for x-rays, and later seen by Dr. Shah (who is no longer a defendant in this action)

(Doc. 128 at 27; Doc. 116-1 at 12). According to Plaintiff, a few hours after his x-rays were taken, Dr. Shah advised him he did not have any broken bones and could go back to his cell (Doc. 116-1 at 13). It is undisputed that Plaintiff saw Dr. Shah around 6:00 p.m. on April 10, 2017 (the date of the fall), and was prescribed Ibuprofen and issued a low bunk/low gallery permit (Doc. 116-1 at 13; Doc. 114-1 at ¶ 7). Dr. Shah noted that Plaintiff was to be discharged from the healthcare unit once a low bunk/low gallery cell became available, and Plaintiff was to be given use of a wheelchair until he followed-up with Dr. Shah (Doc. 114-1 at ¶ 7; *see* Doc. 114-2 at 62).

Plaintiff was discharged from the healthcare unit on April 11, 2017 (Doc. 114-1 at ¶ 8; Doc. 116-1 at 14). Plaintiff was placed in an ADA cell in 8 House, C Wing (Doc. 116-1 at 14). Late in the evening on April 11, or in the early morning of April 12, 2017, Plaintiff attempted to ambulate from his bed to his wheelchair for a drink of water and pulled his back, causing him to fall on his bed (Doc. 128 at 28; Doc. 116-1 at 15). Plaintiff could not move or reach the emergency call button in his cell, so he was made to wait several hours for an officer to walk by (Doc. 128 at 28). Around 12:00 p.m. on April 12, 2017, Defendant Officer Bowker came to Plaintiff's cell and Plaintiff told Bowker he was in pain and needed help because he had injured his back (Do. 116-1 at 16). Bowker told Plaintiff to put in a sick call request, and when Plaintiff explained he could not move and had missed breakfast and lunch, Bowker again remarked that Plaintiff needed to put in a request for sick call (Doc. 128 at 28). Bowker then left (Doc. 128 at 28). At this point, Plaintiff had not eaten for over twelve hours, and had urinated on himself three times (Doc. 116-1 at 17; Doc. 128 at 29). Following shift change around 2:30 or 3:00 p.m. on April 12, 2017, another officer came to Plaintiff's cell who understood Plaintiff's situation warranted further attention (Doc. 116-1 at 17). This officer had a nurse, lieutenant, and other officers report to Plaintiff's cell, and Plaintiff was taken to the healthcare unit (Doc. 116-1 at 17).

In the healthcare unit, Plaintiff was examined by a nurse, who noted that "per Dr. Shah," Plaintiff was to be sent to an outside hospital for a CT-scan of his lower spine (*see* Doc. 114-2 at 66). Plaintiff also received a muscle relaxant, Naproxen, and a one-time dose of Torodol, an NSAID (Doc. 114-1 at ¶ 9). A CT-scan was taken at a hospital that day, which was negative (Doc. 116-1 at 18; Doc. 114-1 at ¶ 9). Plaintiff was again placed in his cell in 8 House upon his return from the hospital with no cellmate and no ADA assistant (Doc. 128 at 29). Because he lacked assistance, Plaintiff generally tried to stay in his wheelchair, even to sleep (Doc. 116-1 at 19). Plaintiff would sometimes be able to get other inmates to push him to meals, but this occurred less than fifty percent of the time (Doc. 116-1 at 19-20). During this time, Plaintiff was in excruciating pain and reinjured his back many times (Doc. 128 at 29). Plaintiff wrote requests to medical advising the doctor that the medication was not effective at relieving his pain (Doc. 128 at 30).

On April 19, 2017, Plaintiff was seen by a nurse, who referred him to a physician for further evaluation (Doc. 128 at 30; *see* Doc. 114-2 at 68). Plaintiff was seen by Dr. Shah on April 26, 2017 for complaints of back pain (Doc. 114-1 at ¶ 11; *see* Doc. 114-2 at 70). Dr. Shah ordered physical therapy for Plaintiff, and prescribed Tramadol, a narcotic, for one month (Doc. 114-1 at ¶ 11; *see* Doc. 114-2 at 70). Plaintiff was scheduled for a follow-up on May 24, 2017 (*see* Doc. 114-2 at 70).

On the morning of April 30, 2017[1], Plaintiff aggravated his lower back and pushed the emergency call button in his cell (Doc. 116-1 at 58). Defendant Officer Johnson responded and Plaintiff told Johnson he was in pain and that it was an emergency (*Id.*). Johnson told Plaintiff he

---

[1] At his deposition, Plaintiff testified that his interaction with Defendant Johnson occurred on April 30, 2017; however, in his affidavit, Plaintiff writes that this interaction took place on May 7, 2017. The Court notes the disparity, but finds it is not material to the issues in this lawsuit.

had seen him sleeping earlier, and questioned how Plaintiff could be in so much pain (*Id.*). Johnson then told Plaintiff he would call and "see if they want to see [him]" (*Id.*). Johnson returned a few minutes later and told Plaintiff that "they said [to] put in a sick call request" (*Id.*).

On May 7, 2017, Plaintiff started filing emergency grievances against the prison administration, Dr. Shah, Officer Bowker, and Officer Johnson for their deliberate indifference to his injury and pain. Plaintiff also complained about being placed in an ADA cell by himself and not being assigned an ADA pusher (Doc. 128 at 30-31) (*see* Doc. 128 at 69-76). The warden, Defendant Lamb, determined that these grievances (dated May 7 and May 8, 2017) did not warrant emergency review (*see* Doc. 128 at 69-76).

On May 24, 2017, Plaintiff saw Defendant Dr. Ahmed for complaints of back pain (Doc. 114-1 at ¶ 14; *see* Doc. 114-2 at 78). Plaintiff contends this is the first time he had seen Dr. Ahmed (Doc. 116-1 at 25). Dr. Ahmed took Plaintiff's pertinent history, which involved prior cocaine use (Doc. 114-1 at ¶ 14; *see* Doc. 114-2 at 78). Plaintiff contends he never discussed his prior drug usage with Dr. Ahmed (Doc. 116-1 at 26). Dr. Ahmed prescribed muscle rub, referred Plaintiff to physical therapy, and permitted continued use of a wheelchair for four weeks (Doc. 114-1 at ¶ 14; *see* Doc. 114-2 at 78). Plaintiff attests there was no discussion about his pain medication, Tramodol, and the fact that it was set to expire in two days (Doc. 128 at 32). Plaintiff further attests Dr. Ahmed told him that it may take awhile for his pain to go away and he was advised to be patient and give it time (*Id.*). Plaintiff testified he did not ask Dr. Ahmed about an ADA pusher during this exam (Doc. 116-1 at 27). Plaintiff was issued muscle rub after this appointment, but asserts it did not reduce or otherwise ameliorate his pain (*Id.*).

On May 26, 2017, Plaintiff was told by the nurse on the medication line that his pain medication had expired and he would have to see a doctor to get a refill (Doc. 128 at 32). Because

it was a holiday weekend, Plaintiff was told he would have to wait to see a doctor until after the long weekend (*Id.*). Plaintiff expected to be called to see the doctor on the following Tuesday, but he was not called to the healthcare unit (*Id.*). After he put in an emergency request, he was seen by a nurse, only to be told there was nothing she could do and Plaintiff would need to be seen by the doctor (*Id.*). According to the affidavit of Dr. Ahmed and Plaintiff's medical records, Plaintiff was seen by a nurse on May 31, 2017 and issued Ibuprofen for three days (Doc. 114-1 at ¶ 16; *see* Doc. 114-2 at 80). Plaintiff was again seen by a nurse on June 1, 2017, and he asked why the doctor did not order his pain medication (Doc. 114-1 at ¶ 17). Plaintiff became frustrated and argumentative and was asked to leave (Doc. 114-1 at ¶ 17; Doc. 128 at 33).

The following day, June 2, 2017, Plaintiff saw Dr. Ahmed and informed him of the pain he was experiencing (Doc. 114-1 at ¶ 18; Doc. 128 at 33; *see* Doc. 114-2 at 81). Plaintiff told Dr. Ahmed that he wanted his pain medication refilled, and Dr. Ahmed refused (Doc. 128 at 34; Doc. 114-1 at ¶ 18). Plaintiff also contends he asked Dr. Ahmed for an ADA attendant, but Dr. Ahmed ignored this request and told Plaintiff he was a young man and should get up and walk (Doc. 128 at 34). Following this appointment, Plaintiff had a physical therapy evaluation, and attended physical therapy on July 10, July 13, July 14, July 18, July 20, July 24, July 26, August 7, August 11, and August 18, 2017 (Doc. 114-1 at ¶ 19). Plaintiff saw Dr. Ahmed again on July 17 and July 19, 2017, and Plaintiff again complained about his ongoing and significant back pain (Doc. 114-1 at ¶¶ 20-21; Doc. 128 at 35; *see* Doc. 114-2 at 98, 103). Dr. Ahmed continued Plaintiff's wheelchair permit for one month and directed him to continue physical therapy (*Id.*).

Plaintiff was discharged from physical therapy on August 18, 2017 (Doc. 114-1 at ¶ 25). Plaintiff was discharged because he had made no progress with function or pain and his strength had declined (Doc. 116-1 at 32; Doc. 114-1 at ¶ 25; *see* Doc. 114-2 at 121-22). On August 23,

2017, Plaintiff saw a nurse and reported that he reinjured his back during his physical therapy on August 18 (Doc. 114-1 at ¶ 26; *see* Doc. 114-2 at 123).  The nurse gave Plaintiff Ibuprofen and referred him to a doctor (*Id.*).  Plaintiff then saw Dr. Ahmed on August 29, 2017 (Doc. 114-1 at ¶ 27; Doc. 116-1 at 37; *see* Doc. 114-2 at 125).  Dr. Ahmed explains he treated Plaintiff with myofascial release therapy, which involves applying gentle pressure and stretching to loosen restrictive movement, leading to reduced pain (Doc. 114-1 at ¶ 27).  Dr. Ahmed also gave Plaintiff a handout describing exercises for low back pain, and prescribed Naproxen (Aleve) for eight weeks, and muscle rub (Doc. 114-1 at ¶ 27; Doc. 116-1 at 37-38; *see* Doc. 114-2 at 125).  Plaintiff contends he did not receive Naproxen as ordered in August, September, or October, and only started receiving it in November (Doc. 116-1 at 39).  Plaintiff next saw Dr. Ahmed on October 25, 2017, wherein Plaintiff requested an ADA pusher, access to the ADA gym, renewal of his low bunk and low gallery permits, and a refill for his Naproxen (Doc. 114-1 at ¶ 29; *see* Doc. 114-2 at 133).  Dr. Ahmed granted all of Plaintiff's requests (Doc. 114-1 at ¶ 29).  Plaintiff asserts the Naproxen did nothing to alleviate his pain (Doc. 116-1 at 41).  Plaintiff was assigned an ADA pusher in October or early November (*Id.* at 40).  Plaintiff asserts he had repeatedly asked Dr. Ahmed for an ADA assistant while being treated by him, but Dr. Ahmed does not recall such requests and there is nothing in Dr. Ahmed's progress notes evidencing such requests (Doc. 114-1 at ¶ 30).  Plaintiff next saw Dr. Ahmed on November 27, 2017, and asked for a refill of his Naproxen, which Dr. Ahmed provided (Doc. 114-1 at 31; *see* Doc. 114-2 at 136).  Plaintiff maintains that the Naproxen did nothing to treat his pain and he advised Dr. Ahmed of its ineffectiveness (Doc. 128 at 38).

### *Requests for Medical Care, ADA Accommodations*

Plaintiff asserts that between August 25, 2017 and October 18, 2017, he wrote grievances

against Defendant Healthcare Unit Administrator Cunningham, Warden Lamb, and Dr. Ahmed for ignoring his requests for ADA assistance and refusing to provide appropriate medication to treat his pain (Doc. 128 at 38). Plaintiff also wrote request slips directed to Cunningham asking for assistance (Doc. 116-1 at 52; *see* Doc. 129 at 40-41, 46, 48), and sent kites to Warden Lamb informing Lamb that Plaintiff was not receiving proper medical treatment and was in need of an ADA attendant (Doc. 116-1 at 51). Plaintiff did not receive any response to his kites, and so he sent Lamb a formal letter, to which he never received any response (*Id.*). Plaintiff does not recall when this letter was sent (*Id.*). At his deposition, Plaintiff testified he was unsure of whether he sent a formal letter to HCUA Cunningham (*Id.* at 52); however, in response to Cunningham's motion for summary judgment, he attached a letter he purportedly sent to her (*see* Doc. 129 at 95-96). This letter is dated June 13, 2017 (*Id.*).

## **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the

facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

*Count One: Eighth Amendment deliberate indifference claim against Defendants Lamb, Cunningham, Ahmed, Bowker, and Johnson*

Plaintiff claims Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment by failing to adequately address or treat his serious medical needs following his fall from a bunk bed at Lawrence on April 10, 2017.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A factfinder may also conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* (internal quotations omitted).

Defendants do not argue that Plaintiff's medical condition is not a serious medical need under the deliberate indifference standard. Therefore, the Court finds this point conceded for purposes of this Order.

### *Dr. Ahmed*

Plaintiff claims Dr. Ahmed was deliberately indifferent to his lower back injury in refusing to prescribe effective pain medication and failing to approve Plaintiff for an ADA attendant.

With regard to Plaintiff's complaints about pain medication, the evidence, credited in Plaintiff's favor, demonstrates that Dr. Ahmed saw Plaintiff on May 24, 2017, two days before his Tramodol prescription was set to expire. Dr. Ahmed did not discuss this with Plaintiff. After Plaintiff's Tramodol expired, he was provided three days of Ibuprofen from a nurse, but was made to wait until June 2, 2017 to see Dr. Ahmed. On June 2, 2017, Dr. Ahmed refused to renew

Plaintiff's Tramodol. According to Dr. Ahmed, he refused to renew Plaintiff's prescription because Tramodol is a narcotic and narcotics are only effective at treating pain for short periods of time, and become less and less effective in long-term situations, while presenting significant risks and side effects (Doc. 114-1 at ¶ 15). Dr. Ahmed believed that the proper course of treatment for Plaintiff's back pain was physical therapy and muscle rub, both of which he had ordered (Doc. 114-1 at ¶ 45). Subsequently, when Plaintiff continued to present to healthcare with complaints of pain, he was provided Ibuprofen from a nurse again on August 23, 2017, and Dr. Ahmed prescribed Naproxen for eight weeks to address his pain on August 29, 2017. Dr. Ahmed continued the Naproxen when he saw Plaintiff again on October 25, 2017 and November 27, 2017. Plaintiff did not see Dr. Ahmed after November 27, 2017.

Based on a review of the foregoing, the Court cannot find that Dr. Ahmed was deliberately indifferent to Plaintiff's pain or that he was deliberately indifferent in failing to continue Plaintiff on Tramodol. Although the Court recognizes Plaintiff's contention that the muscle rub, physical therapy, Ibuprofen, and Naproxen did little to nothing to alleviate his pain, Plaintiff is not entitled to a pain-free existence. *See e.g. Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). Moreover, there is ample evidence demonstrating Dr. Ahmed's efforts to address Plaintiff's pain through various treatments, and there is no indication he doggedly persisted in a course of treatment known to be ineffective. *See Greeno v. Anderson*, 414 F.3d 645, 655 (7th Cir. 2005) (finding that a genuine issue of material fact existed as to whether physician was deliberately indifferent to prisoner's deteriorating medical

condition by continuing to persist with course of treatment that had been ineffective). Thus, while Plaintiff may disagree with Dr. Ahmed's treatment regimen, the Court finds it was not "blatantly inappropriate" and Dr. Ahmed was not deliberately indifferent in failing to alleviate Plaintiff's pain.

Next, the Court considers Plaintiff's claim that Dr. Ahmed was deliberately indifferent in refusing to approve him for an ADA attendant until October 25, 2017. When viewing the evidence in the light most favorable to Plaintiff, Dr. Ahmed was first advised of Plaintiff's request for an ADA attendant during a June 2, 2017 examination. Although Plaintiff made requests for an ADA attendant on numerous occasions, he was made to wait over four months for the same. The record clearly demonstrates significant efforts by Dr. Ahmed to treat Plaintiff's back injury while Plaintiff was in his care. As mentioned above, Dr. Ahmed prescribed physical therapy, muscle rub, Naproxen, and attempted myofascial release therapy. Plaintiff's mere request for an ADA attendant and the refusal to provide the same does not demonstrate deliberate indifference on behalf of Dr. Ahmed. There is no evidence Dr. Ahmed was informed of the difficulties Plaintiff had ambulating without an attendant. Moreover, the evidence demonstrates Dr. Ahmed was attempting to increase Plaintiff's mobility and treat his back injury, and Dr. Ahmed attests that he encouraged Plaintiff to get out of his wheelchair (Doc. 114-1 at ¶ 45). Thus, the Court again finds that Dr. Ahmed's refusal to provide an ADA attendant from June 2017 to October 2017 was not so significant a departure from accepted professional standards or practices that it calls into question whether he was actually exercising his professional judgment. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

For these reasons, Defendant Dr. Ahmed is entitled to summary judgment in his favor[2].

*Officer Bowker*

Plaintiff contends Defendant Officer Bowker was deliberately indifferent when he refused to get assistance for Plaintiff on April 12, 2017, despite Plaintiff being unable to get out of bed and requesting emergency help.

Defendant Bowker contends he was not deliberately indifferent because he acknowledged Plaintiff's complaint of back pain by telling him to fill out a medical request slip.  Defendant Bowker also contends that any delay in Plaintiff receiving medical treatment caused by his actions did not cause any additional injury.

While the Court recognizes Defendant Bowker is not a medical professional and is therefore entitled to defer to the judgment of medical professionals, *see King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (nonmedical personnel are entitled to defer to the judgment of health professionals so long as they do not ignore the prisoner), he is not entitled to ignore Plaintiff's complaints and requests for emergency assistance.  The evidence here establishes that Officer Bowker saw Plaintiff around 12:00 p.m. on April 12, 2017, and was advised Plaintiff could not move from his bed, that he was in significant pain, and that he needed emergency medical attention.  Bowker simply told Plaintiff to put in a sick call request and left.  A few hours later, another correctional officer came to Plaintiff's cell and recognized he needed medical attention, which Plaintiff received.  Although Bowker was not responsible for rendering medical treatment, his failure to further investigate or address Plaintiff's concerns could rise to the level of deliberate

---

[2] Because the Court finds Dr. Ahmed did not violate Plaintiff's constitutional rights, it need not address Dr. Ahmed's argument of qualified immunity.  However, the Court notes the Seventh Circuit has found that qualified immunity does not apply to private medical personnel in prisons.  *See Petties v. Carter*, 836 F.3d 722, 734 (7th Cir. 2016) (citing *Shields v. Illinois Dep't of Corrections*, 746 F.3d 782, 794 (7th Cir. 2014)).

indifference. Also, the Court rejects Bowker's arguments that his actions did not cause any additional injury as Plaintiff was experiencing pain and Bowker's actions may have needlessly delayed medical treatment that could have ameliorated his pain.

For these reasons, Defendant Officer Bowker is not entitled to summary judgment. Officer Bowker is not entitled to qualified immunity because it was clearly established at the relevant time that a prison official may violate the Eighth Amendment by ignoring a plaintiff's complaints of pain and request for emergency care.

*Officer Johnson*

Plaintiff asserts Defendant Officer Johnson was deliberately indifferent in failing to ensure he received medical care on April 30, 2017. On this date, Officer Johnson responded to Plaintiff's emergency call button and Plaintiff advised he had aggravated his back, was in pain, and was experiencing a medical emergency. Johnson said he would call healthcare, and later returned and told Plaintiff that "they" (presumably healthcare personnel) told Plaintiff to put in a sick call request. Officer Johnson does not specifically recall this incident, but attests that if an offender reported a back injury, he would call the healthcare unit and healthcare unit staff would tell Johnson whether the inmate should be sent to the healthcare unit or whether Johnson should tell the offender to put in a sick call request.

Although the evidence is sparse, a reasonable jury may find Defendant Johnson's actions amounted to deliberate indifference. Notably, there is no competent evidence the Court can accept that Johnson in fact called the healthcare unit. As such, the Court again finds that while non-medical personnel such as Officer Johnson are entitled to defer to the judgment of medical professionals, there is not sufficient evidence to demonstrate that Officer Johnson was following the directives of medical professionals. Similar to Officer Bowker, Officer Johnson was advised

that Plaintiff was in significant pain and experiencing a medical emergency.  As such, Officer Johnson was obligated to ensure any treatment decisions were made at the direction of medical professionals, and the Court does not have sufficient evidence that Officer Johnson sought such advice.  Accordingly, Officer Johnson is not entitled to summary judgment.  Officer Johnson is not entitled to qualified immunity because it was clearly established at the relevant time that a prison official may violate the Eighth Amendment by ignoring a plaintiff's complaints of pain and request for emergency care.

*Healthcare Unit Administrator Cunningham*

Plaintiff asserts Defendant Cunningham was deliberately indifferent to his medical condition because she ignored his requests for proper medical treatment submitted through medical request slips and grievances.

Although Cunningham is the healthcare unit administrator, she had no involvement in rendering medical care for Plaintiff.  As such, Cunningham was entitled to defer to the judgment of Plaintiff's treating physicians, including Dr. Ahmed, who had examined Plaintiff numerous times during the relevant period.  *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (nonmedical personnel are entitled to defer to the judgment of health professionals so long as they do not ignore the prisoner).  Further, there is limited evidence in the record that Cunningham received the medical requests or grievances mentioned by Plaintiff.  Indeed, there is only one grievance in the record where it is apparent Cunningham was made aware of Plaintiff's complaints. This grievance, dated January 20, 2018, was responded to by Cunningham and Cunningham indicated Plaintiff was under the care of physicians (*see* Doc. 116-5).  Cunningham also noted that Plaintiff's medical records showed that all prescribed medication was being dispensed, and he had been assigned an ADA attendant.  Based on the lack of evidence in the

record, the Court further finds that any other communications directed to Defendant Cunningham were not sufficient to alert her to an excessive risk to Plaintiff's health or that her handling of the same rose to a level of deliberate indifference, particularly because Plaintiff was under the care of treating physicians at all times relevant.  *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (if the plaintiff's communication to the defendants "in [their] content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety'," they can be found to be deliberately indifferent to Plaintiff's serious needs.) (quoting *Farmer*, 511 U.S. 837).

For these reasons, Defendant Cunningham is entitled to summary judgment. The Court need not consider whether Defendant Cunningham is entitled to qualified immunity because the Court finds she did not violate Plaintiff's constitutional rights.

***Warden Lamb***

Plaintiff contends Warden Lamb failed to make any attempt to address the issues regarding his medical treatment brought to light by Plaintiff through various kites and grievances.  The record demonstrates that Warden Lamb deemed two grievances to not be of an emergency nature (grievances dated May 7 and May 8, 2017), and denied a grievance dated June 7, 2017.  With regard to his handling of grievances, the Court finds it is well settled that while a prison official may be held liable under § 1983 for failing to respond to violations of an inmate's constitutional rights that come to his attention via the grievance process, *see Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996), merely ruling against an inmate on a grievance does not impute liability to a prison official.  *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).  Further, in concurring with the Grievance Officer's decision on Plaintiff's June 7, 2017 grievance, Warden Lamb would have been informed that Plaintiff was actively being treated within the community standards of care.

Warden Lamb is entitled to rely on the judgment of medical professionals in treating Plaintiff's medical condition. Further, there is insufficient evidence in the record to demonstrate Warden Lamb had further knowledge of any issues with Plaintiff's medical treatment, or that he was deliberately indifferent to the same. Accordingly, Warden Lamb is entitled to summary judgment. The Court need not consider whether Defendant Lamb is entitled to qualified immunity because the Court finds he did not violate Plaintiff's constitutional rights.

***Count Two: ADA and RA claim against Defendant IDOC Director Jeffreys***

In Count Two, Plaintiff contends the IDOC violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by failing to accommodate his disability-related needs following his back injury on April 10, 2017. More specifically, Plaintiff asserts he should have been provided an ADA pusher to help him perform his basic daily functions.

In the prison context, a plaintiff can make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act by showing: (1) he is a qualified person; (2) with a disability; (3) the Department of Corrections denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), citing 29 U.S.C. § 705(2)(B); *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006); *Foley v. City of Lafayette*, 359 F.3d at 928 (7th Cir.2004); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997). Refusing to make reasonable accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, "the Supreme Court has located a duty to accommodate in the statute generally." *Id*. In the prison setting, accommodations should be judged in light of overall institutional requirements which include safety, security, and feasibility. *Love v. Westville Correctional*

*Center,* 103 F.3d 558, 561 (7th Cir. 1996).

Defendant Jeffreys asserts he is entitled to summary judgment on this claim because Plaintiff received all ADA accommodations requested, and was not denied access to any programs, including meals, medical care, or access to a gym. Defendant also asserts Plaintiff has not shown that he was intentionally discriminated against because of his disability. The Court agrees. Plaintiff testified he missed meals more than fifty percent of the time from his injury in April 2017 until he was provided an ADA attendant in October 2017. The Court recognizes that meals constitute a program within the ADA and RA; however, the minor and short-term inconveniences experienced by Plaintiff related to his meals do not amount to failure to accommodate. *See Wagoner v. Lemmon*, 778 F.3d 586, 593 (7th Cir. 2015) (holding that IDOC's failure to repair an inmate's wheelchair did not result in a denial of services even though it "impeded" the inmate's access to some facilities). Furthermore, delays of weeks or even months in organizing and implementing an accommodation have been accepted by the Seventh Circuit and, in line with these cases, the Court finds any delay in providing Plaintiff with an ADA attendant was not in bad faith and was not violative of the ADA or RA in this instance. *See Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177-78 (7th Cir. 2013) (four-month delay in securing accessible parking was not failure to accommodate), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (20-month delay did not render accommodation unreasonable).

For these reasons, Defendant Jeffreys is entitled to summary judgment.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Dr. Ahmed (Doc. 113) is **GRANTED**, and the Motion for Summary Judgment filed by Defendants Cunningham, Lamb,

Bowker, Johnson, and Jeffreys (Doc. 116) is **GRANTED IN PART AND DENIED IN PART**. The Clerk of Court shall enter judgment in favor of Dr. Ahmed, HCUA Cunningham, Nicholas Lamb, and Rob Jeffreys and against Plaintiff at the close of this case.   Plaintiff shall proceed on the following claims:

> Count One:   Defendants Bowker and Johnson were deliberately indifferent to Plaintiff's serious medical needs following his fall from a bunk bed at Lawrence on April 10, 2017, in violation of the Eighth Amendment.

**IT IS SO ORDERED.**

**DATED: September 28, 2020**

*s/  Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**